**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Miller Manufacturing Company,

      Plaintiff/Counterclaim-Defendant,

v.

HerculesAG LLC,

      Defendant/Counterclaim-Plaintiff, and

Foshan Shoumei Animal Husbandry
Equipment Co., Ltd., d/b/a Farmates Electrics
Limited,

      Defendant.

Case No. 25-cv-113 (JMB/DJF)

**ORDER**

Plaintiff Miller Manufacturing Company filed an *Unopposed Motion for Alternative Service on Defendant Foshan Shoumei Animal Husbandry Equipment Co., Ltd., D/B/A Farmates Electrics Limited and to Amend the Scheduling Order* ("Motion") (ECF No. 56) on January 27, 2026. The Motion asks the Court to use its authority under Rule 4(f)(3) of the Federal Rules of Civil Procedure to allow Plaintiff to serve Chinese Defendant Foshan Shoumei Animal Husbandry Equipment Co., Ltd., d/b/a Farmates Electrics Limited ("Farmates") using alternative methods in lieu of the procedures prescribed by the Hague Convention, including: (1.) delivering the Amended Complaint and Summons to two different attorneys in the United States who are assisting Farmates with two distinct trademark filings with the United States Patent and Trademark Office; and (2.) serving process on Farmates via email using an address Plaintiff found on Farmates' website that purportedly belongs to Farmates' sales manager. (ECF No. 56 at 2, 4.) In addition to seeking the Court's leave to effectuate alternative service of process, the Motion seeks to amend the pretrial schedule to provide Plaintiff adequate time to serve process on Farmates. (ECF No. 56 at 2.)

After reviewing the Motion, the Court ordered Plaintiff to submit additional evidence to support its Motion and attempt to contact Farmates' U.S. counsel one last time.  (ECF No. 59.) Plaintiff fully complied with the Court's order and amended its Motion to identify a second email address associated with Farmates that Plaintiff seeks to use to serve process.  (ECF No. 62 at 1; ECF No. 63 at 4-7.)  Based on the entire record and for the reasons stated below, the Court grants the Motion in part and denies the Motion in part.

## I.    Alternative Service

### A.    Legal Standards

Rule 4(f) of the Federal Rules of Procedure prescribes the methods for service of process outside the United States, which includes, "by other means not prohibited by international agreement, as the court orders."  This option is "as favored" as the other methods prescribed by the Rule and it is "neither a last resort nor extraordinary relief."  *Rio Properties, Inc. v. Rio Intern. Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002); *see also Patrick's Rest., LLC v. Singh*, No. 18-cv-764 (ECT/KMM), 2019 WL 121250, at *1 (D. Minn. Jan. 7, 2019) (affirming magistrate judge's conclusion that alternative service under Rule 4(f) does not require exhaustion of other service methods).  Though the Rule suggests international agreements are the only limitations on the Court's discretion, due process also requires that any court-ordered method "supply notice of the pendency of a legal action, in a manner and at a time that affords the defendant a fair opportunity to answer the complaint and present defenses and objections."  *Henderson v. United States*, 517 U.S. 654, 672 (1996); *see also Global Air Charters Inc. v. Mayfair Jets DWC-LLC*, No. 24-cv-3862 (LMP/SGE), 2024 WL 5039907, at *1 (D. Minn. Dec. 9, 2024).  Courts may also deny requests for alternative service when it appears the movant filed its motion "whimsically."  *Global Air Charters Inc.*, 2024 WL 5039907, at *2 (quoting *Convergen Energy LLC v. Brooks*, No. 20-cv-3746 (LJL), 2020 WL

4038353, at *4 (S.D.N.Y. July 17, 2020)).

**B.      Analysis**

First, the Court considers whether any of the alternative service methods Plaintiff requests violate a known international agreement. The relevant agreement here is the Hague Service Convention.  The Court concludes that they do not.  Many courts have concluded that "service on a foreign defendant through its U.S. counsel" does not violate the Hague Convention.  *See 1025 W. Addison St. Apartments Owner, LLC v. Grupo Cinemex, S.A. de C.V.*, No. 20-cv-6811 (MEA), 2021 WL 2136073, at *7 (N.D. Ill, May 26, 2021) (collecting cases).  The mere fact that judicial documents may be transmitted eventually to China does not mean that the Hague Convention must be followed.  *See Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 707 (1988).  The Hague Convention's requirements and prohibitions are only triggered when "the internal law of the forum state defines the applicable method of serving process as requiring the transmittal of documents abroad." *Id.* at 700.  Here, service would occur "entirely within the United States" (ECF No. 56 at 6), therefore, the Hague Convention is not implicated.  *See 1025 W. Addison*, 2021 WL 2136073, at *7.  Service by email is also not contrary to the Convention.  Article 10 of the Hague Convention authorizes the delivery of judicial documents through postal channels, unless the state of destination objects.  Though China has objected to Article 10, courts generally have not interpreted the Article to apply to email.  *See AMTO, LLC v. Bedford Asset Mgmt.*, *LLC*, No. 14-cv-9913 (KMK), 2015 WL 3457452, at *7 (S.D.N.Y. July 1, 2015) (collecting cases); *Keith Allen Lind v. Triton Canada Inc.*, No. 23-cv-698 (PJS/LIB), 2025 WL 4236159, at *4 (D. Minn. Feb. 25, 2025).

The Court also concludes that Plaintiff did not move for alternative service whimsically.  Plaintiff has retained the services of a of an international process server, Viking Advocates ("Viking").  (ECF No. 56 at 3.)  Viking identified the Chinese name and address for Farmates.  (*Id.*)

Viking has experience serving Chinese parties and estimates that service through China's Central Authority will take approximately six to twelve months. (*Id.* at 3-4.) Plaintiff's retention of Viking shows it has acted diligently in pursuing service through the procedures outlined by the Hague Convention. Moreover, a delay of six to twelve months is an adequate justification for seeking alternative service. *See In GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262, 266-67 (S.D.N.Y. 2012) (concluding six to eight month delay due to Hague Convention service justified alternative service); *Stream SICAV v. Wang*, 989 F. Supp. 2d 264, 280 (S.D.N.Y. 2013) (concluding six to eighteen month delay due to Hague Convention service justified alternative service).

Having concluded that the Court is not barred by the Hague Convention from authorizing the alternative service methods Plaintiff requests and that alternative service is justified under the circumstances, the Court must consider whether the requested methods otherwise comport with Rule 4(f) and the requirements of due process.

### 1. U.S. Counsel Service

There are several problems with Plaintiff's request to serve process via Farmates' U.S. counsel. First, service on U.S. counsel does not appear to be allowed under Rule 4(f). The Rule states that it applies when a plaintiff seeks to serve an individual "at a place not within any judicial district of the United States." As the text makes clear, Rule 4(f) applies based on where service is effectuated, not where the defendant is necessarily located. *Cf. Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 707 (1988) (concluding Hague Convention was not implicated when state law dictated service was effectuated when plaintiff served process on German defendant's American subsidiary). Plaintiff admits that service on Farmates' U.S. counsel would be "effectuated entirely within the United States." (ECF No. 56 at 6.) Some courts have allowed service of foreign entities via U.S. counsel under the auspices of Rule 4(f) based on the notion that U.S. counsel is merely a

conduit for the transmission of service. *See Bazarian Int'l Fin. Assocs. v. Desarrollos Aerohotelco*, 168 F. Supp. 3d 1, 14-15 (D.C.C. 2016); *1025 W. Addison*, 2021 WL 2136073, at *7. Though characterizing U.S. counsel as a conduit may be accurate, it is entirely contradictory to say in one breath that such service is completed entirely in the United States in order to avoid application of the Hague Convention, and in the next breath say that the service is not within the United States to secure the benefits of Rule 4(f)(3). The Court declines to adopt a contradictory analysis to circumvent an international treaty that is the "supreme Law of the Land." U.S. Const. Art. VI.

Second, the Court is not adequately assured that service on Farmates' U.S. counsel will provide adequate notice to Farmates. When parties request alternative service via U.S. counsel, courts have required some evidence that U.S. counsel will likely inform the party of the lawsuit. *See AMTO, LLC*, 2015 WL 3457452, at *5-6. Specifically, courts have asked for evidence that the lawyer: (1.) has filed a notice of appearance in a relevant action; (2.) has "knowledge of the underlying facts of the case"; (3.) or has a "special relationship" with the defendant, such as a long history of representation. *Id.* The mere fact that a particular attorney represents the defendant in some capacity unrelated to the relevant action is not enough. *Id.* at *6; *see also Juka Innovations Corp. v. Uxoz Direct*, No. 18-cv-3511 (ADS/AYS), 2020 WL 13680679, at *7 (E.D.N.Y. Apr. 20, 2020). Here, Plaintiff has identified two attorneys who have assisted Farmates with trademark work that is unrelated to this matter. (ECF No. 56 at 2, 4.) One of these attorneys no longer represents Farmates (ECF No. 63 at 7), and the other has not responded to any of the emails Plaintiff has sent to him (ECF No. 56 at 5; ECF No. 63 at 7). Plaintiff is also "not aware of a special relationship between Farmates and its U.S. based counsel beyond the attorney-client relationship in connection with Farmates' trademark applications." (ECF No. 63 at 8.) This is not enough to assure the Court that the dictates of due process will be satisfied via this method of service.

### 2.      Email Service

Service of process by email is not a method that exceeds the scope of Rule 4(f).  *See Keith Allen Lind*, 2025 WL 4236159; *AMTO, LLC*, 2015 WL 3457452, at *8.  But the plaintiff must provide "some facts indicating that the person to be served would be likely to receive the summons and complaint at the given email address."  *AMTO, LLC*, 2015 WL 3457452, at *8 (citation modified).  To do so, the plaintiff must show that the email inbox is checked on a regular basis.  *See id.*; *Keith Allen Lind*, 2025 WL 4236159, at *4; *Global Air Charters Inc.*, 2024 WL 5039907, at *3; *Patrick's Rest., LLC*, 2019 WL 121250, at *3.  Plaintiff seeks to serve process on Farmates using two different email addresses: ivy@farmates.com and ivan@farmates.com.  The Court finds that service using either or both email addresses will adequately apprise Farmates of this lawsuit.

Plaintiff offers several pieces of evidence to support its contention that Farmates regularly monitors the ivy@farmates.com email address.  (ECF No. 63 at 2-4.)  The best piece of evidence comes from Defendant HerculesAG's co-owner's deposition on February 12, 2026.  (ECF No. 63 at 2-3; ECF No. 64.)  During the deposition, Defendant's co-owner stated that she communicates with Farmates concerning purchase orders and shipping via email.  (ECF No. 64 at 24.)  She further stated that she: (1.) communicates with a person at Farmates named "Ivy"; (2.) emails Ivy "once or twice a month"; (3.) uses "the Ivy at Farmates email address" to send emails; and (4.) last corresponded with Ivy earlier this month, February 2026.  (*Id.* at 25-26.)  This evidence provides sufficient assurance that service via the ivy@farmates.com email address will notify Farmates of this lawsuit.  *See Global Air Charters Inc.*, 2024 WL 5039907, at *3 (authorizing email service based on sworn testimony that plaintiff's CFO regularly corresponded with one of defendant's directors via email); *Patrick's Rest., LLC*, 2019 WL 121250, at *3 (authorizing email service partly based on evidence that defendant "frequently received business correspondence related to this matter at that email

address").

Plaintiff also offers various pieces of evidence to support its assertion that Farmates actively monitors the ivan@farmates.com email (*see* ECF Nos. 63 at 4-7; 63-2; 63-3; 63-4; 63-5; and 64-1). This evidence includes:

1.   Screenshots produced by Defendant HerculesAG LLC showing a text message thread between Defendant HerculesAG's co-owner and an individual identified as "Ivan." (ECF No. 64-1.)

2.   Screenshots from Amazon.com associated with a cattle prod vendor named "Farmates Vetplus" that has a business name similar to Defendant Farmates' Chinese name and an address identical to Farmates'. (*Compare* ECF No. 57 at 3 *and* ECF No. 57-2 at 4 *with* ECF No. 63-3 at 6.) These screenshots show that individuals have made verified purchases of cattle prods from Farmates Vetplus and left reviews attesting to their satisfaction with the products. (ECF Nos. 63-3, 63-4.) The products also appear to still be on sale.

3.   Email correspondence between Plaintiff's counsel and Amazon's counsel that identifies ivan@farmates.com as the only email Amazon has on file for the vendor named "Farmates Vetplus." (ECF No. 63-2.)

4.   An email sent by Plaintiff's counsel to the ivan@farmates.com email address asking the recipient to accept service on behalf of Farmates. (ECF No. 63-8.)

5.   A signed declaration stating that counsel did not receive a response to the above-referenced email, but that he also did not receive "a bounce-back error message," which would normally indicate a failed delivery. (ECF No. 63 at 7.)

These pieces of evidence individually would not demonstrate that attempted service on

Farmates using the ivan@farmates.com email address would likely notify Farmates of this lawsuit. But taken as a whole, they do.  The text message thread suggests the individual named "Ivan" with whom Defendant's co-owner corresponded concerning the manufacture of cattle prods is the same Ivan who is associated with the email address that starts with "ivan."  Ivan@farmates.com is also the only email address associated with Farmates Vetplus, an Amazon vendor whose address is identical to the address listed in Farmates' import records.  (*Compare* ECF No. 57 at 3 *and* ECF No. 57-2 at 4 *with* ECF No. 63-3 at 6.)  Farmates VetPlus sells cattle prods, which are the kinds of products at issue in this lawsuit. (ECF No. 42.)  This vendor is actively selling these cattle prods on Amazon, and customers have left hundreds of reviews.  Twenty-seven of these reviews were submitted in the last twelve months, and four of those were submitted in 2026.  (ECF No. 63-3 at 3, 6.)  Finally, Plaintiff sent an email to ivan@farmates.com and did not receive any indication that the email is inactive.  Based on this information, the Court concludes that Farmates regularly uses the ivan@farmates.com email address to conduct business.  This is enough to satisfy the Court that serving Farmates at this email address will likely inform Farmates of this lawsuit.  *See Patrick's Rest., LLC*, 2019 WL 121250, at *3; *Hong Kong Leyuzhen Tech. Co. Ltd. v. Individuals, Corps., Ltd. Liab. Companies, Partnerships, & Unincorporated Associations Identified on Schedule "A,"*, No. 25-cv-22117 (RAR), 2025 WL 2840697, at *2 (S.D. Fla. June 25, 2025) (authorizing alternative service via email when defendants conducted their businesses over the Internet and plaintiff demonstrated defendants used particular email address to conduct that business); *Natty Paint LLC v. Individuals, Bus. Entities, & Unincorporated Assocs. Identified on Exhibit 1*, No. 1:22-cv-1193 (LY), 2023 WL 3681682, at *2 (W.D. Tex. Jan. 17, 2023) (same).

For all these reasons, the Court grants the Motion in part insofar as Plaintiff may serve process on Defendant Farmates by emailing ivy@farmates.com and ivan@farmates.com.  Plaintiff's

motion for alternative service is otherwise denied.

## II.     Pretrial Schedule Amendments

Plaintiff requests a six-month extension of all outstanding pretrial schedule deadlines to account for alternative service.[1]  Plaintiff initially asked that this extension apply to the entire proceeding, but when it filed amendments to the Motion, it modified the extension request so that the amendment would only apply to proceedings involving Farmates and not Defendant HerculesAG LLC (ECF No. 62).  Defendant HerculesAG LLC objects to Plaintiff's request to litigate this matter on two separate tracks.  (ECF No. 60 at 3.)  Plaintiff and Defendant HerculesAG LLC have also filed a *Stipulation to Amend Scheduling Order* (ECF No. 60) ("Stipulation") requesting short extensions of the fact discovery deadline and the fact discovery-related non-dispositive motion deadline.

Rule 16 of the Federal Rules of Civil Procedure allows modifications of the pretrial schedule order when good cause exists.  Fed. R. Civ. P. 16(b)(4).  "The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements."  *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716-17 (8th Cir. 2008) (citation modified).  Plaintiff's request is premised on the delays associated with serving Farmates, a China-based defendant that was only added to this lawsuit in November 2025.  The Court finds that Plaintiff has acted diligently in following the pretrial scheduling order and that the delays associated with serving Farmates provide good cause for granting an extension.  For this reason, the Court agrees that a six-month extension is warranted.  However, the Court will not bifurcate the pretrial schedule.  Such a division would create increased logistical burdens for the Court, complicate the discovery process, and potentially interfere with the parties' ability to settle the matter.

---

[1] Plaintiff alternatively requested a one-year extension if the Court denied its request for alternative service. (ECF No. 56 at 9.)  Since the Court is granting the alternative service request, it focuses its analysis on the six-month request.

Because the Court is extending all unexpired pretrial deadlines by six months, the Stipulation is denied as moot.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings here, **IT IS HEREBY ORDERED THAT**:

1. Plaintiff Miller Manufacturing Company's *Unopposed Motion for Alternative Service on Defendant Foshan Shoumei Animal Husbandry Equipment Co., Ltd., D/B/A Farmates Electrics Limited and to Amend the Scheduling Order* (ECF No. 56) and *Addendum and Amendment to Dkt. No. 56 Motion for Alternative Service* (ECF No. 62) are **GRANTED IN PART AND DENIED IN PART** as follows:

   A. Plaintiff may serve Defendant Foshan Shoumei Animal Husbandry Equipment Co., Ltd., d/b/a Farmates Electrics Limited ("Farmates") by emailing a copy of the Summons and Complaint to ivy@farmates.com and/or ivan@farmates.com.

   B. The pretrial deadlines are amended as follows:

      i. Close of fact discovery: August 17, 2026;

      ii. Non-dipositive motions related to fact discovery: September 3, 2026;

      iii. Disclosure of initial expert identities: September 10, 2026;

      iv. Service of initial expert reports: October 1, 2026;

      v. Disclosure of rebuttal expert identities and service of rebuttal reports: November 2, 2026;

      vi. Close of expert discovery: December 2, 2026;

      vii. Non-dispositive motions related to expert discovery: December 9,

2026;

    viii.    Dispositive motions: February 17, 2027; and

    ix.    Trial ready date: June 18, 2027.

    C.    The Motion is **DENIED** in all other respects.

2.    Plaintiff Miller Manufacturing Company and Defendant HerculesAG LLC's *Stipulation to Amend Scheduling Order* (ECF No. 60) is **DENIED AS MOOT**.


Dated: February 24, 2026

    *s/ Dulce J. Foster*
    Dulce J. Foster
    United States Magistrate Judge