**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Miller Manufacturing Company,

Plaintiff and Counterclaim Defendant,

v.

HerculesAG LLC,

Defendant and Counterclaim Plaintiff,

and

Foshan Shoumei Animal Husbandry Equipment Co., Ltd., *doing business as Farmates Electrics Limited*,

Defendant.

File No. 25-CV-0113 (JMB/DJF)

**ORDER**

---

Kristine M. Boylan, Adam G. Chandler, Andrew S. Dosdall, Anton C. Brown, and Hannah Fereshtekhou, Taft Stettinius & Hollister LLP, Minneapolis, MN; Neil Peluchette (*pro hac vice*), Jonathan G. Polak (*pro hac vice*), and Mike Etienne (*pro hac vice*), Taft Stettinius & Hollister LLP, Indianapolis, IN; and Samantha Picans (*pro hac vice*), Taft Stettinius & Hollister LLP, Denver, CO, for Plaintiff and Counterclaim Defendant Miller Manufacturing Company.

Clint L. Conner, Conner IP, Minneapolis, MN; and Charles Jared Knight, I (*pro hac vice*), Christian D. Stewart (*pro hac vice*), Morgan Williamson LLP, Amarillo, TX, for Defendant and Counterclaim Plaintiff HerculesAG LLC.

---

This matter is before the Court on Plaintiff and Counterclaim Defendant Miller Manufacturing Company's (Miller) Motion for Default Judgment against Defendant Foshan Shoumei Animal Husbandry Equipment Co., Ltd., d/b/a Farmates Electrics Limited (Farmates). (Doc. No. 94.) For the reasons explained below, the Court denies the motion.

## BACKGROUND

On January 10, 2025, Miller filed this action against Defendants Hercules AG LLC (Hercules) and Farmates (together, Defendants). (Doc. No. 1.) On June 9, 2025, Hercules filed its Answer and Counterclaim. Miller filed an Amended Complaint on November 18, 2025, and Hercules filed its Answer and Counterclaim to the Amended Complaint on December 2, 2025. Farmates has not appeared or filed any pleadings.

Miller, a company headquartered in Glencoe, Minnesota, manufactures and distributes "farm, ranch, and pet products," which it sells through farm and ranch retailers via distributors in the United States, Canada, and other third countries. (Doc. No. 42 [hereinafter, "Am. Compl."] ¶¶ 3, 11.) Of relevance to this suit are several electric livestock prods made by Miller, which it has sold since the late 1930s through its brand, "Hot-Shot." (*Id.* ¶ 11.) Miller owns trademarks for its Hot-Shot electric livestock prods, including for the following (together, Miller's Marks): 1,635,385—"Hot Shot"; 1,853,000—"HS2000"; 2,628,144—"The Green One"; 2,649,088—"The Red One"; 2,741,111—color green; 2,812,216—"Hot Shot"; 2,931,153—"Hot Shot"; 3,738,668—color yellow; 4,891,955—"Hot Shot." (*Id.* ¶ 13.)

In September 2024, Miller learned that Hercules markets an electric livestock prod under the name "Hornet 2600" to retailers in Minnesota. (*Id.* ¶¶ 4, 16.) The Hornet 2600 uses "yellow as a main color throughout its marketing and product dress." (*Id.* ¶ 16.) Further, Hercules's website hosts customer reviews that specifically compare its Hornet product to Miller's Hot-Shot product. (*Id.* ¶ 17.) Retailers and the public have confused Hercules's Hornet product with Miller's Hot-Shot product. (*Id.* ¶¶ 19–20.) For example,

a retailer says that they "just received a new shipment of Hercules AG hot shots!" (*Id.* ¶ 19.) In September 2024, Miller sent cease and desist notices to Hercules; however, "Hercules has continued the infringing conduct." (*Id.* ¶ 24.)

About a month later, in October 2024, Miller learned that Farmates, a Guangdong, China-based company, sold electric livestock prods to retailers and consumers in Minnesota that used color variations in its marketing and product dress that violated Miller's Marks. (*Id.* ¶ 28.) Miller alleges that Farmates's conduct will create a likelihood of confusion among the relevant public. (*Id.* ¶ 39.) For example, Miller sells an all-green electric livestock prod via its Hot-Shot brand, which it calls "The Green One"; meanwhile, Farmates sells an all-green prod, which Miller alleges violates its Marks. (*Id.* ¶ 28.) Miller asked Farmates via October 17, 2024 letter, and follow-up letter in November 2024, to cease and desist its infringing practices by December 31, 2024. (*Id.* ¶¶ 29, 31.) In the follow-up letter, Miller informed Farmates that it had become aware of Farmates's expanded infringement of Miller's Marks to include its sale of a yellow-handle electric livestock prod on Amazon.com. (*Id.* ¶ 31, Ex. E.) Farmates did not respond to either of Miller's letters. (*Id.* ¶¶ 30, 32.)

In December 2024, Farmates's web hosting provider removed several of Farmates's infringing product pages at Miller's request. (*Id.* ¶¶ 33–34.) Nevertheless, despite actual notice and Miller's enforcement efforts, Farmates continues to use Miller's Marks in connection with its marketing and sales of electric livestock prod products, including one that it markets as a "Hot Shot Cattle Prod." (*Id.* ¶¶ 35–37.) Miller also "recently learned

that Farmates is the manufacturer and supplier of product to Hercules, acting in concert with Hercules' infringing conduct." (*Id.* ¶ 38.)

Miller brings four identical causes of action against both Defendants: for trademark infringement in violation of the Lanham Act § 32; for violation of Lanham Act § 43(a), and for violation of the Minnesota Deceptive Trade Practices Act, Minn. Stat. § 324D.44. (*Id.* ¶¶ 40–59.) As for its prayer for relief, Miller seeks an order that enjoins Defendants (and related persons and entities) from: using Miller's Marks; using any name, term, symbol, product configuration, packaging, images, or descriptions (among other things) containing Miller's intellectual property; using any designation of origin or false or misleading descriptions that is likely to cause mistake or confusion about Defendants' association or connection to Miller. (*Id.* at 18–19.) Miller further seeks an order requiring Defendants to do the following: (1) destroy or dispose of materials in its possession that includes Miller's intellectual property, including Miller's Marks; and (2) take necessary steps to remove Miller's intellectual property from public view and access. (*Id.* at 19–20.) Miller also seeks monetary damages and an award of attorneys' fees and costs available under the Lanham Act. (*Id.* at 20.)

In January 2026, Miller filed a motion in which it sought, among other things, the Court's authorization for Miller to attempt alternate methods of service of the Summons and Amended Complaint on Farmates pursuant to Federal Rule of Civil Procedure 4(f)(3). (Doc. Nos. 56, 62.) According to Miller's counsel, Miller had set in motion attempts to effect service on Farmates in China, but that traditional methods of service on international parties in accordance with the Hague Service Convention can take up to one year. (Doc.

No. 56 at 3–4.) Miller's counsel also reported that Miller had undertaken a thorough investigation into Farmates's U.S.-based contacts, and that it had identified an addresses for U.S.-based counsel for Farmates via United States Patent and Trademark Office records and a monitored email addresses for someone named Ivan, a U.S.-based sales manager for Farmates. (Doc. No. 56 at 4.) On February 24, 2026, Magistrate Judge Dulce J. Foster granted Miller's unopposed motion and authorized Miller to serve Farmates via Ivan's email address. (Doc. No. 69.) Thereafter, Miller effected service of the Summons and Amended Complaint on Farmates (via Ivan's email address) on February 25, 2026. (Doc. No. 71.) Farmates's Answer was therefore due on March 18, 2026. (*See id.*) Farmates did not answer and has not otherwise appeared. Upon application by Miller, the Clerk entered default against Farmates in Miller's favor on March 30, 2026. (Doc. Nos. 72, 74.)

**DISCUSSION**

Miller seeks default judgment on all of its claims against Farmates.[1] While the allegations in the Complaint, taken as true, set forth legitimate causes of action for trademark infringement, unfair competition, and for a violation of the MDTPA, they also allege an interrelationship between Farmates and Hercules that, in the discretion of this Court, precludes entry of default judgment against Farmates.

[1] Miller also seeks an order finding Farmates liable for infringement of Miller's trademarks and for permanent injunctive relief, including that Farmates cease its use and requiring destruction of Miller's intellectual property. (Doc. No. 96 at 14–15.) Further, Miller seeks disgorgement of "Farmates'[s] infringing Amazon sales in the amount of $623,842.18," and release of "any and all money in Farmates'[s] Amazon seller account [] up to the above-identified disgorgement award." (*Id.* at 15.)

As a threshold matter, the Court observes that a party seeking default judgment must follow a two-step process. First, they must obtain an entry of default from the Clerk of Court. Fed. R. Civ. P. 55(a). Miller satisfied this step. (*See* Doc. Nos. 72, 74.) Second, if the party is not seeking a sum certain, as here, it must apply to the Court for a judgment in its favor. Fed. R. Civ. P. 55(b)(2); *AGCO Fin., LLC v. Littrell*, No. 16-CV-4105 (WMW/FLN), 2017 WL 7369877, at *2 (D. Minn. Dec. 15, 2017) (quotations omitted). The district court has discretion at this second step in determining whether to enter a default judgment. *Belcourt Pub. Sch. Dist. v. Davis*, 786 F.3d 653, 661 (8th Cir. 2015). Upon entry of default, the factual allegations in the complaint are deemed admitted except the allegations relating to the amount of damages; the Court must then "consider whether the unchallenged facts constitute a legitimate cause of action" because a party in default does not admit conclusions of law. *Marshall v. Baggett*, 616 F.3d 849, 852 (8th Cir. 2010) (quotation omitted); Fed. R. Civ. P. 8(b)(6).

A default judgment is required and "is not unfair," when a defendant who has been properly served with the summons and complaint does not respond or otherwise appear. *Trs. of the St. Paul Elec. Const. Indus. Fringe Benefit Funds v. Martens Elec. Co.*, 485 F. Supp. 2d 1063, 1064–65 (D. Minn. 2007). However, the law generally disfavors default judgments. *Belcourt Pub. Sch. Dist.*, 786 F.3d at 661. In addition, in cases with multiple defendants alleged to be jointly liable, courts generally should not enter default judgment against one defendant "until the matter has been adjudicated with regard to all defendants, or all defendants have defaulted." 10A *Wright and Miller's Federal Practice and Procedure* § 2690 (4th ed. 2025); *see also Pfanenstiel Architects, Inc. v. Chouteau*

*Petroleum Co.*, 978 F.2d 430, 432 (8th Cir. 1992)) (concluding that "the better practice is to withhold granting a default judgment until the action is resolved on the merits against the remaining non-defaulting defendants" (quotation omitted)). Indeed, "[w]hen co-defendants are similarly situated, inconsistent judgments will result if one defendant defends and prevails on the merits and the other suffers a default judgment." *Michel Sales Co. v. Ningbo GI Power Import & Expert Co.*, No. 24-CV-3657 (JMB/ECW), Doc. No. 92 at 22 (D. Minn. Sept. 26, 2025) (quoting *Angelo Iafrate Contr., LLC v. Potashnick Constr., Inc.*, 370 F.3d 715, 722 (8th Cir. 2004)). To avoid an inconsistent result, "a judgment on the merits for the answering party should accrue to the benefit of the defaulting party." *Angelo Iafrate Contr.*, 370 F.3d at 722.

In this case, the unchallenged factual allegations in the Complaint, taken as true, set forth legitimate causes of action against Farmates for trademark infringement, unfair competition, and for a violation of the MDTPA. The Court must next consider whether granting default judgment against Farmates could result in inconsistent judgments. Farmates's co-defendant, Hercules is actively litigating the claims against it, and at the time of the hearing, Hercules requested that the Court exercise its discretion and *not* issue an order for default judgment against Farmates because inconsistent judgments may result. (Doc. No. 113.) Based on the allegations in the Amended Complaint, the Court agrees.

The Amended Complaint includes allegations of an interrelationship between Farmates and Hercules, characterizing them as "acting in concert" with one another to infringe Miller's Marks:

> Though originally thought to be unrelated to the Hercules infringement, Miller recently learned that Farmates is the manufacturer and supplier of product to Hercules, acting in concert with Hercules's infringing conduct.

(Am. Compl. ¶ 38; *see also* Doc. No. 47 at 7 ("Hercules admits that Farmates is the manufacturer and supplier of Hercules' HORNET product.").) This allegation, if true, creates the possibility of inconsistent judgments.[2] If the Court enters default judgment as to Farmates, this necessarily requires accepting Miller's allegations that its marks are valid. Hercules, however, asserts defenses of invalidity (Doc. No. 47 at 9–11) and raises several counterclaims (Counterclaim III, IV, VI, VII, VIII, and IX) requesting declarations of invalidity or cancellation of invalid marks (*id.* at 64–74, 83–105). In this way, granting Miller's request to enter default against Farmates would be inconsistent with Hercules's stated defenses.

Thus, based on Miller's express allegation that the parties in a relationship such that they are acting in concert with each other to infringe Miller's Marks,[3] the Defendants are

[2] At the hearing on this motion, Miller asked the Court to take a narrow view of the supply relationship, and Miller's counsel represented that Hercules sells *only* the Hornet 2600 product. Miller's counsel argued that because Miller does not seek default judgment against Farmates based on any relationship between Farmates and Miller involving the Hornet 2600, the allegations of the supply relationship should not preclude default judgment against Farmates. However, there is no allegation in the Amended Complaint that mirrors counsel's representation. To the contrary, the allegation concerning the related conduct of Farmates and Hercules is broad and not limited to the Hornet 2600.

[3] While this motion was pending but after the hearing, Miller's counsel filed a letter seeking to "supplement the record" in support of this motion. (Doc. Nos. 124, 124-1.) In it, counsel attaches the transcript from the deposition of a Hercules executive, and represents that Farmates was aware of the motion for default judgment and that it chose not to attend the hearing and instead paid Hercules's counsel to advance arguments on its behalf. (*See id.*) However, as noted above, the Court does not consider matters outside of the pleadings on

sufficiently similarly situated to compel denial of Miller's default judgment request at this time. Miller may renew this motion for default judgment against Farmates once its claims against Hercules have been resolved. The motion is denied.[4]

**ORDER**

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT Plaintiff Miller Manufacturing Company's motion for default judgment against Defendant Foshan Shoumei Animal Husbandry Equipment Co. Ltd., d/b/a Farmates Electrics Limited (Doc. No. 94) is DENIED.

Dated: October 5, 2026

/s/ *Jeffrey M. Bryan*
Judge Jeffrey M. Bryan
United States District Court

---

a motion for default judgment. *See, e.g.*, *PRN Health Servs. LLC v. Indep. Health Solutions, LLC*, 803 F. Supp. 3d 845, 852 (D.S.D. 2025). Even if it did, the representations in this letter further underscore the relatedness of the Defendants, and, consequently, why entry of default against one defendant and not the other is inappropriate at this time.

[4] Nothing in this Order should be construed as foreclosing any future attempt by Miller to seek injunctive relief as against any party, including Farmates.